UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTOR ESCOBEDO PADILLA, | ) | Case No. CV 14-145-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

## I.

## <u>INTRODUCTION</u>

On January 17, 2014, plaintiff Victor Escobedo Padilla filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits.  Both parties have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff presents one issue for review:  whether the Administrative Law Judge ("ALJ") improperly rejected the opinion of the agreed upon medical examining physician, Dr. Stephen Suzuki.  Amd. Pl. Mem. at 2-7.

1    Having carefully studied the parties' papers, the Administrative Record

2    ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein,

3    the ALJ properly rejected Dr. Suzuki's opinion.  Consequently, the court affirms

4    the decision of the Commissioner denying benefits.

5                                              **II.**

6                        **FACTUAL AND PROCEDURAL BACKGROUND**

7          On September 23, 2010, at forty-two years of age, plaintiff filed DIB and

8    SSI applications based on disability.  AR 225-35.  Plaintiff had past work

9    experience as a wordworking machine feeder and as a jointer operator.  AR 56-59,

10   70.  Plaintiff, a naturalized citizen, completed the sixth grade in Mexico.  AR 54.

11   His subsequent schooling in the United States was limited to English classes;

12   however, plaintiff's ability to understand, read and speak English is limited, and

13   he cannot write in English.  AR 54-55.

14         In plaintiff's DIB and SSI applications, he alleged a disability onset date of

15   April 14, 2009.  AR 225, 230.  Plaintiff based his claims on lumbar spine

16   protrusion, lumbar spine radiculopathy, right elbow epicondylitis, insomnia, and

17   anxiety.  AR 274.  The Commissioner denied plaintiff's applications initially and

18   upon reconsideration, after which he requested a hearing.  AR 89-102.

19         The hearing before the ALJ was held on August 20, 2012.  AR 50-80.

20   Plaintiff was represented by counsel and testified, and was assisted by a Spanish

21   language interpreter.  AR 52-68, 77.  Vocational expert Rheta King also testified

22   at the hearing.  AR 68-77.  On September 25, 2012, the ALJ denied plaintiff's

23   claims for benefits.

24         Applying the well-known, five-step sequential test to determine whether

25   plaintiff was disabled, the ALJ found, at step one, that plaintiff had not engaged in

26   substantial gainful activity since April 14, 2009, the alleged onset date.  AR 36.

27         At step two, the ALJ found that plaintiff had the severe impairments of disc

28   protrusions and facet hypertrophy at multiple levels of the lumbosacral spine with

1    spondylosis and an annular tear at L5-S1.  AR 37.

2         At step three, the ALJ found that plaintiff did not have an impairment or

3    combination of impairments that met or medically equaled the severity of one of

4    the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  AR 37-38.

5         The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

6    determined that plaintiff's RFC enabled him to push, pull, lift, and carry twenty

7    pounds occasionally and ten pounds frequently.  AR 38.  He also found that

8    plaintiff could sit, stand, and walk without significant limitation.  *Id*.  The ALJ

9    limited plaintiff to occasional postural activity, with the exception that plaintiff

10   could balance frequently.  *Id*.  He found plaintiff had no other significant

11   limitations.  *Id*.

12        At step four, the ALJ found that plaintiff was unable to perform any past

13   relevant work.  AR 42.

14        At step five, the ALJ found that there were jobs that exist in significant

15   numbers in the national economy that plaintiff could perform.  AR 42-43.  They

16   included:  marker, housekeeping cleaner, and advertising materials distributor.

17   AR 43.  These occupations took into consideration plaintiff's age, education,

18   English language literacy limitations, work experience, and RFC.  *Id*.  As a result,

19   the ALJ determined that plaintiff had not been under a disability as defined in the

20   Social Security Act since April 14, 2009.  AR 43-44.

21        Plaintiff filed a timely request for review of the ALJ's decision, which was

22   denied by the Appeals Council.  AR 7-9, 24-27.  The ALJ's decision stands as the

---

25        [1]  Residual functional capacity is what a claimant can do despite existing
     exertional and nonexertional limitations.  *See generally Cooper v. Sullivan*, 880
26   F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the
     five-step evaluation, the ALJ must proceed to an intermediate step in which the
27   ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*,
28   486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  final decision of the Commissioner.

2                                    **III.**

3                        **STANDARD OF REVIEW**

4          This court is empowered to review decisions by the Commissioner to deny

5  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Commissioner

6  must be upheld if they are free of legal error and supported by substantial

7  evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  But if the

8  court determines that the ALJ's findings are based on legal error or are not

9  supported by substantial evidence in the record, the court may reject the findings

10 and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,

11 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

12         "Substantial evidence is more than a mere scintilla, but less than a

13 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

14 "relevant evidence which a reasonable person might accept as adequate to support

15 a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

16 F.3d at 459.  To determine whether substantial evidence supports the ALJ's

17 finding, the reviewing court must review the administrative record as a whole,

18 "weighing both the evidence that supports and the evidence that detracts from the

19 ALJ's conclusion."  *Id*.  The ALJ's decision "'cannot be affirmed simply by

20 isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d at 1035

21 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence

22 can reasonably support either affirming or reversing the ALJ's decision, the

23 reviewing court may not substitute its judgment for that of the ALJ.  *Id*.  (citation

24 omitted).

25                                    **IV.**

26                          **DISCUSSION**

27         Plaintiff contends that the ALJ improperly rejected the medical opinion

28 evidence offered by Dr. Suzuki, an orthopedic surgeon and qualified medical

                                        4

1  evaluator for the State of California.  *See* Amd. Pl. Mem. at 3-7; AR 626, 636 (Dr.

2  Suzuki's occupation and qualifications).  Plaintiff contends the ALJ failed to

3  articulate a legally sufficient rationale to reject Dr. Suzuki's opinion, and this

4  "failure to properly consider the treating opinions is reversible error" pursuant to

5  *Lester v. Chater*, 81 F.3d 821, 829-30 (9th Cir. 1996) (as amended), and Social

6  Security Ruling ("SSR") 96-2p and 96-8p.[2]  Amd. Pl. Mem. at 4.  The court

7  disagrees.  In the decision, the ALJ provides several specific and legitimate

8  reasons why he rejected Dr. Suzuki's medical opinion, and these reasons were

9  supported by substantial evidence in compliance with federal law.

10      In determining whether a claimant has a medically determinable impairment,

11  among the evidence the ALJ considers is medical evidence.  20 C.F.R.

12  § 404.1527(b).  In evaluating medical opinions, the regulations distinguish among

13  three types of physicians:  (1) treating physicians; (2) examining physicians; and

14  (3) non-examining physicians.  20 C.F.R. § 494.1527(c), (e); *Lester*, 81 F.3d at

15  830.  "Generally, a treating physician's opinion carries more weight than an

16  examining physician's, and an examining physician's opinion carries more weight

17  than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th

18  Cir. 2001); *see generally* 20 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the

19  treating physician is generally given the greatest weight because the treating

20  physician is employed to cure and has a greater opportunity to know and observe a

21  claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996), *superseded by*

22  *statute on other grounds,* 20 C.F.R. § 404.1529(c)(3); *Magallanes v. Bowen*, 881

23  _____

24      [2]    "The Commissioner issues Social Security Rulings to clarify the Act's
    implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the SSA.  SSRs do not have the force of law.  However, because

26  they represent the Commissioner's interpretation of the agency's regulations, we
    give them some deference.  We will not defer to SSRs if they are inconsistent with

27  the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th

28  Cir. 2001) (internal citations omitted).

1  F.2d 747, 751 (9th Cir. 1989).  "[T]he ALJ may only reject a treating or examining

2  physician's uncontradicted medical opinion based on 'clear and convincing

3  reasons.'"  *Carmickle v. Comm'r of  Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th

4  Cir. 2008) (citing *Lester*, 81 F.3d at 830-31).  "Where such an opinion is

5  contradicted, however, it may be rejected for 'specific and legitimate reasons that

6  are supported by substantial evidence in the record.'"  *Id*. (quoting *Lester*, 81 F.3d

7  at 830-31).

8                  **Dr. Suzuki Was Not Plaintiff's Treating Physician**

9              In rejecting Dr. Suzuki's opinion, the ALJ first noted that Dr. Suzuki was

10  not a treating physician and therefore his opinions are not entitled to the same

11  weight afforded treating source opinions, which opinions in this case did not

12  support the limitations opined by Dr. Suzuki.  AR 40.  Plaintiff argues that Dr.

13  Suzuki's opinion should have been given greater weight.  *See* Amd. Pl. Mem. at 3-

14  4.  Plaintiff conflates the terms "treating physician" and "examining physician,"

15  and also presupposes that Dr. Suzuki's jointly agreed upon appointment to review

16  plaintiff's case and assess his disability status for the Worker's Compensation

17  Board somehow affords his opinion additional weight in this case.  *Compare* Amd.

18  Pl. Mem. 3 (referring to Dr. Suzuki as "the agreed medical examining physician")

19  *with id.* at 4 ("failure to properly consider the treating opinions is reversible

20  error"); *see id.* at 3 n.1 (Dr. Suzuki "is no mere examining physician" but rather a

21  "'super' examining physician" and "therefore his opinion should ordinarily be

22  followed").  Plaintiff's assertion that Dr. Suzuki's opinion merited greater

23  consideration in the instant matter because plaintiff and the defendant in his

24  worker's compensation case both agreed to allow Dr. Suzuki to evaluate plaintiff's

25  disability status for purposes of that action lacks any legal support.[3]

26  _____

27        [3]    Moreover, an ALJ is not bound by disability determinations issued by other

28  government agencies.  20 C.F.R. §§ 404.1504, 416.904 (2001) (stating that a

1    As stated earlier, a treating physician's opinion carries more weight than an

2    examining or reviewing physician's opinion. *Holohan*, 246 F.3d at 1202. The

3    record supports the ALJ's finding that Dr. Suzuki was not plaintiff's treating

4    physician. On September 19, 2011, Dr. Suzuki conducted an Initial Orthopedic

5    Agreed Panel Qualified Medical Evaluation for plaintiff. AR 626-48. The

6    evaluation was performed to provide disability information in a worker's

7    compensation suit plaintiff had filed based on an injury that had occurred in

8    January 2008. *See* AR 626, 648. Plaintiff had been referred to Dr. Suzuki for the

9    evaluation. AR 635. In the report, Dr. Suzuki indicates that he examined plaintiff

10   for one hour, and that the total time spent on the evaluation – including a review of

11   plaintiff's medical records from 2008 to 2011 and Dr. Suzuki's dictation – was

12   five hours and forty-five minutes. AR 636. Dr. Suzuki's ultimate findings were

13   based on other treating and examining physicians' records. *See* AR 634, 638-47.

14   Moreover, there is no indication that Dr. Suzuki treated plaintiff for his ailments.

15   *See generally* AR 626-48.

16   In sum, plaintiff had been referred to Dr. Suzuki for evaluation for a specific

17   and limited purpose. Dr. Suzuki's evaluation of plaintiff was brief in time and

18   scope, and the record does not indicate that plaintiff received any prior or

19   subsequent treatment from Dr. Suzuki. These facts support the ALJ's finding that

20   Dr. Suzuki was not a treating physician for plaintiff. As a result, the ALJ was not

21   required to assign more weight to his opinion during his initial review of it. *See*

22   *generally Smolen*, 80 F.3d at 1285.

23   **Dr. Suzuki's Opinion Conflicted with His Examination Findings**

24   A second reason the ALJ gave for assigning less weight to Dr. Suzuki's

25   ───────────────

26   decision by any other governmental agency about whether one is disabled is based

27   on its rules and is not binding on the Social Security Administration and that the
     Social Security Administration must make disability determinations based on

28   Social Security law).

7

1    evaluation of plaintiff was that Dr. Suzuki's disability determination conflicted

2    with his own clinical findings in his examination of plaintiff.  AR 40.  "'The ALJ

3    need not accept the opinion of any physician, including a treating physician, if that

4    opinion is brief, conclusory, and inadequately supported by clinical findings.'"

5    *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray v. Comm'r*

6    *of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)).

7          Mild elbow tendinitis and mild tennis elbow strain that was intermittent

8    along with low back strain were Dr. Suzuki's own diagnoses during his evaluation

9    of plaintiff.  AR 635.  After plaintiff's neurologic examination, Dr. Suzuki noted

10   that during resisted testing of plaintiff's right hip, plaintiff "complained of

11   increased back pain as well as shooting pain down the left leg."  AR 631.  During

12   his examination of plaintiff's spine, he reported that plaintiff had "tenderness over

13   the lumbosacral paraspinals [and] . . . posterior iliac crest," and "tenderness in the

14   right buttocks region," but demonstrated no tenderness on palpation about the

15   cervical or thoracic spine or over the sciatic notch.  AR 632.  He also noted that

16   plaintiff "demonstrated a positive straight leg raise both right and left sides for

17   increased back pain."  *Id.*  Dr. Suzuki further added the June 2008 protruding disc

18   and the June 2009 right-sided lumbar radiculopathy findings to his diagnosis of

19   plaintiff.  AR 635.  Based on these limitations, Dr. Suzuki determined the

20   following with respect to plaintiff's work restrictions:  "[Plaintiff] should be

21   precluded from any heavy lifting, pushing or pulling of more than five pounds.  He

22   should have no requirements for squatting, kneeling, crawling or repetitive

23   bending at the waist."  *Id*.

24         The ALJ found that Dr. Suzuki's examination diagnoses and work

25   restrictions for plaintiff were incongruent.  He found that Dr. Suzuki:

26              seems to ignore the fact that his own clinical findings are largely

27              benign.  Specifically, the only positive clinical findings he notes were

28              tenderness and reduced range of motion.  He found no evidence of

1
2
3

motor, sensory, reflex loss, positive straight leg-raising tests, or other signs of nerve root or spinal cord involvement, or other significant clinical findings that might support such an aggressive assessment.

4
5
6

AR 40.  The ALJ's statement that Dr. Suzuki found no evidence of positive straight leg-raising test results is incorrect.  *See* AR 632.  But the ALJ otherwise accurately recounted Dr. Suzuki's clinical findings.

7
8
9
10
11
12
13
14
15

As such, the ALJ reasonably found Dr. Suzuki's clinical findings do not warrant the extreme work limitations he prescribed for plaintiff.  Plaintiff's mild elbow tendinitis, mild tennis elbow strain, and low back strain did not appear to be severely restricting during the examination, as evidenced by the generally unremarkable results of the range of motion and lower and upper extremity tests Dr. Suzuki performed on plaintiff.  *See* AR 632-34.  The ALJ's rejection of Dr. Suzuki's work restriction assessment as inconsistent with his own clinical findings is thus supported by substantial evidence in the record, and is a specific and legitimate reason.  *See Chaudhry*, 688 F.3d at 671.

16

**Dr. Suzuki Did Not Consider the August 2011 X-Ray Study**

17
18
19
20
21
22

The ALJ further rejected Dr. Suzuki's opinion because there is no indication he considered or reviewed the August 2011 x-ray study of plaintiff's lumbar spine.  AR 40.  Dr. Suzuki examined plaintiff on September 19, 2011, and reported his findings on October 23, 2011.  AR 626, 636.  As the ALJ noted, the results of an August 25, 2011 x-ray study were "essentially unremarkable."  AR 40, 662.  The findings were:

23
24
25

Negative for fracture or subluxation.  Alignment is maintained.  Lumbar vertebral bodies demonstrate normal height.  No significant loss of intervertebral disk spaces.

26
27

AR 662.  Dr. Suzuki's report indicates he did not review this x-ray study or any other medical records after June 2011.  AR 638-47.

28

Instead, Dr. Suzuki relied on a June 5, 2008 MRI and June 16, 2009

9

1   electrodiagnostic studies.  AR 635, 639, 641.  Dr. Suzuki appears to have

2   presumed that the June 2008 and June 2009 protruding disc and right-sided lumbar

3   radiculopathy findings were still accurate and germane to the symptoms plaintiff

4   manifested during his September 2011 examination.  No contemporaneous MRI or

5   electrodiagnostic studies were conducted to confirm the continued existence and

6   nature of those conditions.  Dr. Suzuki's report failed to indicate how those

7   particular physical deficiencies – documented as much as three years earlier –

8   were currently affecting plaintiff to such a degree that plaintiff should be

9   "precluded from any heavy lifting, pushing or pulling of more than 5 pounds."

10  *See* AR 635.

11      The ALJ found that the August 2011 x-ray study "raises concerns regarding

12  the reliability of the earlier MRI study."  AR 39.  Although x-rays and MRIs may

13  reveal different things, the ALJ's finding was not unreasonable, particularly given

14  the age of the MRI.  As such, Dr. Suzuki's failure to consider the x-ray study was

15  another specific and legitimate reason for the ALJ to give little weight to Dr.

16  Suzuki's opinion.

17              **Dr. Suzuki Ignored a Gap in Treatment**

18      Dr. Suzuki's review of plaintiff's medical records reflects no treatment

19  records for more than a year after April 2010.  *See* AR 644-45.  Yet as the ALJ

20  found, Dr. Suzuki "seems to ignore the fact that there is a large treatment gap after

21  April 2010."  AR 40.  In particular, the ALJ found this treatment gap is

22  inconsistent with Dr. Suzuki's "aggressive assessment."  *Id.*

23      It is clear that an ALJ may discount a claimant's credibility based on

24  "unexplained or inadequately explained failure to seek treatment."  *Molina v.*

25  *Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and

26  citations omitted).  Defendant contends an ALJ should likewise be able to

27  "discredit a physician who ignores a prolonged unexplained treatment gap when

28  he should know that a person with disabling impairments could not go for more

than a year without seeking treatment." D. Mem. at 5. The court agrees this is a proper consideration.

Moreover, the record reflects that to the extent plaintiff was receiving treatment for his pain, it was conservative, and Dr. Suzuki knew it. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Just prior to, during, and right after Dr. Suzuki's September 2011 evaluation, plaintiff was only taking ibuprofen for his back pain and it "help[ed] him." *See* AR 650 (August 2, 2011 notes of Dr. Ruben M. Ruiz, III); AR 627 (plaintiff's September 2011 statement to Dr. Suzuki that his back pain symptoms were alleviated with the use of ibuprofen); AR 652-53 (October 4, 2011 notes of treating physician Dr. Ruiz indicating plaintiff had been prescribed ibuprofen and Tylenol Arthritis). This contemporaneous treatment is inconsistent with Dr. Suzuki's recommendation that plaintiff "be considered a candidate for epidural steroid injections or lumbosacral surgery." *See* AR 635.

In sum, the ALJ provided four reasons for rejecting Dr. Suzuki's opinion that were specific and legitimate and support by substantial evidence in the record. As such, the ALJ did not err in rejecting Dr. Suzuki's opinion.

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: June 5, 2015

SHERI PYM
UNITED STATES MAGISTRATE JUDGE

11